UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CECIL A. PARRISH,

    Plaintiff,

            v.                              Case No. 13-cv-1054-JPG-SCW

THE BURLINGTON NORTHERN AND
SANTA FE RAILWAY COMPANY,

    Defendant.

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion for summary judgment filed by defendant The Burlington Northern and Santa Fe Railway Company ("BNSF") (Doc. 29). Plaintiff Cecil A. Parrish has responded to the motion (Doc. 32), and BNSF has replied to that response (Doc. 33).   Parrish asks the Court to strike BNSF's response or, in the alternative, for an extension of time to file his response (Doc. 34).   In this case, Parrish alleges that BNSF is liable under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq*., for an injury he incurred on April 12, 2013, while working for BNSF.

I.      **Preliminary Procedural Matters**

As a preliminary matter, Parrish's motion to strike contains a substantive response to BNSF's argument in its reply brief that Parrish's response was untimely.   As such, it is a sur-reply brief, which is not allowed under any circumstances.   *See* Local Rule 7.1(c).   Accordingly, the Court will strike Parrish's motion to strike (Doc. 34).

Nevertheless, the Court rejects BNSF's timeliness argument.   BNSF asks the Court to disregard Parrish's response because it was late.   BNSF filed its summary judgment motion on September 23, 2014, and Parrish filed his response on October 27, 2014, thirty-four days later. However, the response was not, in fact, late.   It is true the Local Rule 7.1(c) allows a party thirty

days to respond, but that thirty days runs from the date of *service*, not the date of *filing*.   When the

date of service triggers a response period, three extra days are added to the response period under

Federal Rule of Civil Procedure 6(d) when service is made electronically. So it appears the

response period expired on October 26, 2014.   However, since October 26, 2014, fell on a

Sunday, the response period actually expired the following day, October 27, 2014, the day Parrish

filed his response.   *See* Fed. R. Civ. P. 6(a)(1)(C).   For these reasons, the Court finds Parrish's

response was timely.

     The Court now turns to the substance of BNSF's summary judgment motion.

## II.    Summary Judgment Standard

     Summary judgment must be granted "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P.

56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind.,*

*Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).   A court must construe the evidence in the light most

favorable to the nonmoving party and draw all reasonable inferences in favor of that party.   *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678,

685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

     The initial summary judgment burden of production is on the moving party to show the

Court that there is no reason to have a trial.   *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712

F.3d 1166, 1168 (7th Cir. 2013).   Where the nonmoving party carries the burden of proof at trial,

the moving party may satisfy its burden of production in one of two ways.   It may present

evidence that affirmatively negates an essential element of the nonmoving party's case, *see* Fed. R.

Civ. P. 56(c)(1)(A), or it may point to an absence of evidence to support an essential element of the

nonmoving party's case without actually submitting any evidence, *see* Fed. R. Civ. P. 56(c)(1)(B).

*Celotex*, 477 U.S. at 322-25; *Modrowski*, 712 F.3d at 1169.   Where the moving party fails to meet

its strict burden, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion.   *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists.   *Celotex*, 477 U.S. at 322-26; *Anderson*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168.   A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

## III.    Facts

Viewed in Parrish's favor, the admissible evidence establishes the following relevant facts for the purpose of the pending summary judgment motion.

Parrish worked for BNSF as a conductor.   On April 12, 2013, he was working as the yard foreman of a BNSF crew at a Gilster-Mary Lee ("GML") factory that was preparing to pull rail cars out of the GML yard.   In order to pull the cars out, they had to be coupled with a locomotive. Coupling involves aligning a drawbar on the railcar coupler and a drawbar on the locomotive coupler so that when they impact each other, the knuckles of the couplers automatically attach to allow the locomotive to pull the railcar.[1]

At the GML yard, coupling was somewhat complicated by the fact that the railroad track

---

[1] A detailed history and description of the coupling process is set forth in *Norfolk & Western Railway Co. v. Hiles*, 516 U.S. 400, 403-07 (1996).

was curved.   On a straight track, the railcar coupler and the locomotive coupler couple when they contact each other if both drawbars are aligned at a ninety degree angle from the end of the car, that is, in a center position, so that they meet head-on on impact.   On a curved track, however, the drawbars on the couplers have to be pivoted to the left or right so that when they contact each other, they meet head-on even though the railcar and locomotive are not perfectly parallel due to the curve in the track.   The drawbars are designed to pivot to accommodate such curves, although they may get stuck due to weight, age, rust, dirt or foreign objects.

On April 12, 2013, Parrish and his crew were preparing to couple a railcar to a locomotive on the GML curved railroad track.   The first attempt at coupling did not work, so Parrish tried to adjust the positions of the drawbars.[2]   He was able to pivot the drawbar on the locomotive coupler to the appropriate position by hand but the drawbar on the railcar would not move.   Parrish decided to use a tool to pry the railcar drawbar into the proper position for coupling with the locomotive.   The tool was a piece of tubular steel about three feet long and an inch and a half in diameter that was kept at the GML facility and used on a regular basis by BNSF employees to move stuck coupler drawbars.   Although the tool was not specifically designed to pry stuck drawbars into position and was not formally approved or authorized by BNSF, Parrish had been taught by BNSF to use the tool for that purpose when he began working at the GML yard, had used it for that purpose at least twenty times, had taught others to use the tool for that purpose, and had been observed by his supervisors without comment on numerous occasions using it for that

---

[2] There is a question of fact about whether Parrish unsuccessfully attempted to couple the locomotive and railcar by causing them to impact each other before trying to adjust the drawbars. Parrish does not describe such an attempt in his description of the events he gave in his deposition, but does not foreclose the possibility that it occurred either.   His affidavit states that there was such an attempt.   While ordinarily the Court will disregard an affidavit that conflicts with earlier deposition testimony, *see Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 919 n. 4 (7th Cir. 2001); *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67-68 (7th Cir. 1995), because of the absence of testimony about a first attempt to couple in the deposition, the affidavit does not technically conflict with the deposition.

purpose.   BNSF did not provide Parrish any other tool or instruction on any other method to move stuck drawbars.   Parrish had never had a problem using the tool prior to April 12, 2013.

Parrish placed one end of the tool between the drawbar and the coupler casing and pulled on the other end to try to pry the drawbar into the proper position.   Instead, the tool came loose, causing Parrish to tip backwards.   When he stepped back to catch himself, his foot slipped on the gravel surface and his ankle snapped sideways at a ninety degree angle to his leg.   Substantial medical treatment so far has not been able to fix Parrish's ankle such that he can return to work.

BNSF had not received any complaint about the railcar coupler prior to April 12, 2013, and post-incident inspection did not reveal any defect in the coupler.

On October 8, 2013, Parrish filed this lawsuit.   In the First Amended Complaint, Parrish brings claims under FELA, 45 U.S.C. § 51 *et seq*, charging that BNSF was negligent (Count I) and negligent *per se* for violation of the Safety Appliance Act ("SAA"), 49 U.S.C. § 20301 *et seq*. (Count II).   Count I centers on BNSF's alleged failure to provide him with a safe workplace and proper tools and equipment on the job.   Count II centers on BNSF's allowing a railcar to be used that was not equipped with coupler that coupled automatically on impact.   BNSF now asks the Court for summary judgment on the grounds that Parrish has no evidence it was negligent in any way, that Parrish's injury was foreseeable or that the couplers malfunctioned.

**IV.    Analysis**

Parrish brings both claims in this case under FELA; the SAA does not provide a private right of action but merely establishes a standard applicable in an appropriate FELA case.   *See Lisek v. Norfolk & W. Ry. Co.*, 30 F.3d 823, 825 (7th Cir. 1994).   FELA provides that

> [e]very common carrier by railroad while engaging in commerce between any of the several States or Territories . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, employees of such carrier, or by reasons of any defect or

insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51.   FELA's enactment stemmed from the belief that "justice demands that one who gives his labor to the furtherance of the [railroad] enterprise should be assured that all combining their exertions with him in the common pursuit will conduct themselves in all respects with sufficient care that his safety while doing his part will not be endangered."   *Sinkler v. Missouri Pac. R.R. Co.*, 356 U.S. 326, 330 (1958).   Accordingly, "FELA imposes on railroads a general duty to provide a safe workplace."   *McGinn v. Burlington N. R.R. Co.*, 102 F.3d 295, 300 (7th Cir. 1996).

Because FELA is a "broad remedial statute," the courts are to construe it liberally in order to effectuate congressional intent.   *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 562 (1987).   As such, the plaintiff's burden of proof in a FELA case is less than in a negligence case.   *Lisek*, 30 F.3d at 832.   "The railroad is liable if 'the proofs justify with reason the conclusion that employer negligence played any part, even the slightest in producing the injury . . . .'"   *Id.* (quoting *Harbin v. Burlington N. R.R. Co.*, 921 F.2d 129, 131 (7th Cir. 1990)). Also, FELA defendants are barred from employing "traditional" liability defenses such as the fellow servant rule, contributory negligence, and assumption of risk.   *Green v. CSX Transp., Inc.*, 414 F.3d 758, 766 n. 2 (7th Cir. 2005) (citing *Williams v. National R.R. Passenger Corp.*, 161 F.3d 1059, 1061 (7th Cir. 1998)).

A FELA claim cannot survive summary judgment unless the plaintiff has offered "evidence proving the common law elements of negligence, including duty, breach, foreseeability, and causation."   *Williams*, 161 F.3d at 1062 (citing *Fulk v. Illinois Cent. R.R. Co.*, 22 F.3d 120, 124 (7th Cir. 1994)).   However, evidence that even slight negligence caused an injury is enough

6

to overcome summary judgment and get to a jury.  *Williams*, 161 F.3d at 1061 (citing

*Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994)).

Nevertheless, "a FELA plaintiff is not impervious to summary judgment," and the court

may properly grant a defendant's summary judgment motion where "the plaintiff presents no

evidence whatsoever to support the inference of negligence."  *Lisek*, 30 F.3d at 832.  "To

establish that a railroad breached its duty to provide a safe workplace, the plaintiff must show

circumstances which a reasonable person would foresee as creating a potential for harm."

*McGinn*, 102 F.3d at 300. "To establish such foreseeability, a plaintiff must show that the

employer had actual or constructive notice of those harmful circumstances."  *Holbrook v. Norfolk

S. Ry. Co.*, 414 F.3d 739, 742 (7th Cir. 2005).

A.    Count I: FELA Negligence

BNSF asks the Court to grant it summary judgment on Count I on the grounds that Parrish

has no evidence that it breached any duty to Parrish or that his injury was foreseeable.   With

respect to the breach of duty, BNSF points to *Ewing v. St. Louis Southwestern Railway Co.*, 772

S.W.2d 774, 775 (Mo. Ct. App. 1989), in which a railroad worker was injured when the wrench he

was using slipped.   There, the court found that the plaintiff had presented no evidence that the

slipping wrench was caused by any negligence of the railroad.   *Id.* at 776.   With respect to the

foreseeability element, BNSF argues that it did not have actual or constructive notice that the

railcar drawbar did not move properly or that the tool Parrish used would slip.

In response, Parrish argues that BNSF was aware of coupling problems at the GML yard

but failed to repair or replace the couplers involved, to move the railroad operations at GML so that

they did not involve a curved track, to provide better training about the coupling problems at GML,

or to provide an appropriate tool to adjust drawbars.   He distinguishes *Ewing* by noting that the

plaintiff in that case was using an appropriate tool to repair non-malfunctioning equipment,

whereas he was using a makeshift tool to adjust an allegedly malfunctioning drawbar.

The Court declines to grant summary judgment on Count I in light of the at least "slight evidence" that BNSF was negligent.   BNSF clearly knew that coupling on a curved track like the one at GML on occasion required adjusting coupler drawbars to align them with each other and that at times the drawbars became stuck so they could not be moved easily by hand.   Parrish's supervisors had taught him how to make the necessary adjustments and had witnessed him and other BNSF employees make such adjustments a number of times.   Not only had they witnessed the adjustments being made, they had witnessed them being made with the tool Parrish used on April 12, 2013, which BNSF acknowledges was not authorized or approved for such use.   Thus, unlike the defendant in *Ewing*, BNSF was on notice that an improper tool was being used to adjust stuck drawbars and should have foreseen the possibility of injury to one of its employees as a result.   Accordingly, BNSF is not entitled to summary judgment on Count I.

B.      Count II:   SAA Violation

BNSF asks the Court to grant it summary judgment on Count II on the grounds that there is no evidence it violated the SAA.   The SAA requires a railroad carrier to equip its railroad vehicles – including locomotives and railcars – with couplers that couple "automatically by impact . . . without the necessity of individuals going between the ends of the vehicles." 49 U.S.C. § 20302(a)(1)(A).   The SAA essentially requires "that rail cars be equipped with automatic couplers and that all couplers be sufficiently compatible so that they will couple on impact." *Norfolk & W. Ry. Co. v. Hiles*, 516 U.S. 400, 407-08 (1996).   Thus, after the SAA, railroads are no longer permitted to use older, more dangerous coupling mechanisms that require workers to be present between cars during the coupling process.

The use of railcars without properly functioning automatic couplers violates the SAA, and the railroad is liable for any resulting injury regardless of whether the railroad was negligent.   *Id.*

8

at 408; *Lisek v. Norfolk & W. Ry. Co.*, 30 F.3d 823, 825-26 (7th Cir. 1994).   However, it is not a violation of the SAA when a coupler drawbar misaligns during the ordinary course of railroad operations and requires a railroad employee to go between railcars to realign it before coupling. *Hiles*, 516 U.S. at 409.   Misaligned drawbars are part and parcel of normal railroad operations and do not, as a matter of law, indicate a malfunctioning coupler.   *Id.* at 412.   Thus, where railcars fail to automatically couple upon impact, the railroad can escape liability under the SAA by showing the couplers failed to couple because the drawbars had not been properly aligned to begin with. *Id.* at 410.

In this case, the evidence, viewed in Parrish's favor, shows that there was an unsuccessful attempt at coupling immediately before Parrish tried to align the drawbar using the tool.   This is sufficient to establish a claim under the SAA.   *See Lisek*, 30 F.3d at 829 ("the failure to couple creates the nearly irrebuttable presumption that the Act has been violated").   However, even under these circumstances, BNSF is entitled to try to establish the defense that misalignment of the drawbars was the cause of the failure to automatically couple on the first try.   *Hiles*, 516 U.S. at 410.   It has not presented unassailable evidence of this in its summary judgment briefing and is therefore not entitled to summary judgment.

## V.   Conclusion

For the foregoing reasons, the Court **STRIKES** Parrish's motion to strike or, in the alternative, for an extension of time (Doc. 34) and **DENIES** BNSF's motion for summary judgment (Doc. 29).

**IT IS SO ORDERED.**
**DATED:   December 8, 2014**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

9